UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHERRY M. WALKER,

      Plaintiff,

v.                           CASE No. 8:06-CV-2336-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence, the decision will be affirmed.

I.

      The plaintiff, who was thirty-three years old at the time of the administrative hearing and who has the equivalent of a high school education, has worked as a cashier, bus driver, certified nurse's assistant, adjuster, cook,

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

and warehouse selector (Tr. 23, 55). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to back and leg problems (Tr. 54). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease of the lumbar spine, a herniated nucleus pulposus at L5-S1, obesity, and depression (Tr. 15). He concluded that these impairments restricted the plaintiff to a limited range of light work (Tr. 16). He stated that the plaintiff was further restricted as follows (id.):

> The claimant is limited to performing climbing, stooping, crouching, kneeling, and crawling to less than one third of an eight hour work day, and she can occasionally perform balancing. The claimant should never perform climbing of ladders, ropes, or scaffolds. The claimant requires a sit/stand option at her own discretion and requires the option to walk up to 10 feet. The claimant is further limited to performing pushing/pulling with her feet and legs to less than one third of an eight hour workday. She requires a work environment that allows for only minimal exposure to vibrations, and uneven terrains, and only moderate exposure to

-2-

moving machinery and unprotected heights.
Finally, due to the claimant's mental impairment
she can perform only simple repetitive tasks and
can tolerate only minimal stress.

The law judge determined that these restrictions prevented the

plaintiff from returning to past work (Tr. 23). However, based upon the

testimony of a vocational expert, the law judge ruled that the plaintiff could

perform other work that exists in significant numbers in the national

economy, such as small parts assembler, merchandise marker, and arcade

attendant (Tr. 24). The law judge therefore decided that the plaintiff was not

disabled. The Appeals Council let the decision of the law judge stand as the

final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2003, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

-4-

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on two grounds. Neither warrants reversal.

The plaintiff argues first that the law judge's decisive hypothetical question to the vocational expert did not contain all of the limitations the law judge found to exist (Doc. 16, p. 11). In this respect, the plaintiff points out that the law judge in determining the plaintiff's residual functional capacity found that, "due to the claimant's mental impairment she can perform only simple repetitive tasks and can tolerate only minimal stress" (Tr. 16). However, while the hypothetical question upon which the law judge relied included the restriction of minimal stress, it did not include a restriction to "simple repetitive tasks" (Tr. 326-27). Consequently, the hypothetical question relied upon by the law judge was unquestionably flawed. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

The Commissioner's response to this contention is based upon the fact that, after the expert answered the question affirmatively by identifying three jobs that a person with the plaintiff's vocational profile could perform, the law judge asked the expert if those three jobs were "light and unskilled with an SVP of two," and the expert replied, "Yes, they are"

(Tr. 328). That query does not correct the hypothetical question; the deficiency remains. But that additional information raises the issue whether the error in the hypothetical question is harmless.

The Commissioner points out that the follow-up question specifically asked about "unskilled" work, noting further that an SVP of two equates to unskilled work (Doc. 17, p. 8, n. 3). He then states that the regulations define "unskilled work" as that which "needs little or no judgment to do simple duties." 20 C.F.R. 404.1568(a), 416.968(a). Consequently, the failure to include in the hypothetical question a limitation to "simple" work is clearly a harmless error since the three jobs identified by the expert are in that category. See Williams v. Barnhart, 2005 WL 1943186 at ** 3-4 (11th Cir. 2005)(unpub. dec.); Battle v. Astrue, 2007 WL 2193546 at *7 (11th Cir. 2007)(unpub. dec.).

The inquiry about the unskilled nature of the three jobs does not necessarily cover a restriction to "repetitive tasks." However, the description of the job of small products assembler states that a worker at that job "[p]erforms any combination of following repetitive tasks on assembly to mass produce small products" (Dictionary of Occupational Titles ("DOT")

706.684-022)(4th ed. 1991) (emphasis added). Accordingly, the failure to
include a restriction of repetitive tasks in the hypothetical question is
harmless error as to the job of small products assembler. Significantly, this
job is the most abundant of the three, with about 1,200 jobs locally, 7,200
jobs statewide, and 225,000 jobs nationally (Tr. 328). In fact, there are more
jobs in this category than in the other two categories combined (id.).
Furthermore, the showing of harmless error as to one of the three jobs is
enough to sustain the validity of the answer to the hypothetical question.
Caldwell v. Barnhart, 2008 WL 60289 at *2 (11th Cir. 2008)(unpub. dec.).

        Moreover, an examination of the description of the job of
merchandise marker shows that the failure to include a restriction to simple
repetitive tasks in the hypothetical is harmless error as to that job because the
job does not demand a mental capacity beyond that possessed by the plaintiff.
The restriction to simple repetitive tasks can only be plausibly based upon
the law judge's finding that the plaintiff had a moderate impairment in
concentration, persistence or pace (see Tr. 16). The description of
merchandise marker in the DOT reflects that the job involves essentially what
the name suggests (DOT 209.587-034). Consequently, there is every reason

-8-

to think that the plaintiff could perform that job, despite a moderate limitation in concentration, persistence or pace, and a concomitant restriction to simple repetitive tasks. The failure to include a restriction to simple repetitive tasks in the hypothetical question is therefore harmless error as to the job of merchandise marker.

It is not clear from the job description of arcade attendant whether a person with a moderate limitation in concentration, persistence or pace could adequately perform that job (see DOT 342.667-014). The fact that the job involves simple unskilled work suggests that she could. On the other hand, the job description seems a little more demanding than the job of merchandise marker. In all events, even if this category (which of the three has the smallest number of positions) were excluded, the existence of the large numbers of jobs in the other two categories (about 1,600 jobs locally, 10,200 jobs statewide, and 310,00 jobs nationally) establishes that the failure to include the restriction to simple repetitive tasks is harmless error. Caldwell v. Barnhart, supra.

The plaintiff's second contention is that the law judge improperly rejected the opinions of her treating physicians. Opinions from

-9-

treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).   Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is not a case in which the law judge failed to evaluate the opinions of treating and examining physicians or to state the weight given to each.   To the contrary, the law judge explained his assessment of those opinions in detail (Tr. 21-23). The plaintiff's argument, rather, is that the law judge should have come to different conclusions on those opinions. However, the plaintiff has not shown that the evidence compels different conclusions. See Adefemi v. Ashcroft, supra.

On this issue, the plaintiff argues that the law judge should have given greater weight to the opinion of Dr. John C. Amann.  On the plaintiff's first visit to Dr. Amann on December 11, 2001, the doctor wrote (Tr. 117-18):

> From the standpoint of her neurologic condition and MRI, Ms. Walker should be able to at least attempt sedentary work on a part-time basis. However, I suspect that her pain is going to hurt her productivity, and I doubt she will be able to continue even sedentary work on a continuous uninterrupted basis.
>
> For practical purposes she has reached MMI from her work related injury which was over a year ago now. I would estimate her impairment to be 10% whole person for unoperated lumbar disc disease as well as peripheral nerve entrapment (although entrapment of the lateral femoral cutaneous nerve may be due more to her excess weight than work injury[)].

The Commissioner persuasively argues that Dr. Amann's opinion is not entitled to the weight customarily afforded a treating physician since he rendered his opinion on the plaintiff's first visit and thus did not have a detailed longitudinal picture of her condition. See 20 C.F.R. 404.1527(d), 416.927(d); Gibson v. Heckler, 779 F.2d 619 (11th Cir. 1986). Furthermore, the opinion is weak in that the doctor "suspects" that pain would hurt productivity and he "doubts" the plaintiff will be able to continue sedentary work on an uninterrupted basis. Also, that opinion seems inconsistent with an impairment rating of 10% of the whole person.

-11-

In any event, the law judge set forth a reasonable assessment of

Dr. Amann's opinion. Thus, he stated (Tr. 21-22):

> The undersigned has considered but gives little
> weight to the opinion of Dr. Amann[,] a treating
> physician's opinion dated December 11, 2001. At
> that time Dr. Amann opined that the claimant's
> reports of pain would hurt her productivity and that
> he doubted that she would be able to continue
> performing sedentary work on a continuous
> uninterrupted basis. However, the record shows
> that Dr. Amman's [sic] opinion is not consistent
> with the objective diagnostic studies. This was
> shown on July 29, 2002, when Dr. Amann reported
> that the claimant's EMG and nerve conduction
> studies were normal. It is further noted that the
> claimant's myelography study only showed a slight
> bulging of the L3-4 and L4-5 levels with no
> significant stenosis identified, and there was no
> impingement on the nerve root sleeves.
> Furthermore, the undersigned finds that Dr.
> Delgado's opinion, while one of a one time
> examining physician is more consistent with the
> objective medical evidence. This was shown on
> October 6, 2003, when after review of the
> claimant's diagnostic studies and after physical
> examination, Dr. Delgado opined that the claimant
> should be able to return back to work with no
> lifting over 45 pounds. Dr. Delgado also opined
> that based on the neurological studies he did not
> have a clear explanation for the claimant's chronic
> pain condition, and that her small herniated disc
> partially calcified at the L5-S1 levels did not
> explain her reported symptoms. Therefore, when

> considering the medical evidence as a whole, the
> undersigned gives significant weight to the opinion
> of Dr. Delgado whose opinion is supported by the
> objective medical evidence, and finds that Dr.
> Amann's opinion was based on the claimant's
> subjective complaints of pain.

This is a reasonable assessment. Consequently, it provides good cause for discounting Dr. Amann's opinion. The plaintiff's assertion that there is objective evidence to support Dr. Amann's opinion is insufficient (Doc. 16, p. 15). As indicated, to overturn the law judge's finding concerning Dr. Amann's opinion, the evidence must compel a different finding.

The plaintiff also challenges the law judge's assessment of the opinion of treating psychiatrist Dr. Evaristo P. Badiola that the plaintiff had a Global Assessment of Functioning ("GAF") of 45, which, as the law judge noted, reflects serious symptoms or serious impairments (Doc. 16, p. 16). Again, this opinion was rendered the first time Dr. Badiola saw the plaintiff and therefore is not entitled to the weight normally accorded opinions of treating physicians. Moreover, Dr. Badiola's opinion was limited to a GAF score and, as the Commissioner points out, such a score is of questionable value in determining the plaintiff's work capability (see Doc. 17, p. 7).

In any event, the law judge reasonably evaluated Dr. Badiola's

opinion. In this respect, the law judge stated (Tr. 22):

> The undersigned has also considered but gives
> little weight to the opinion of Dr. Badiola[,] a
> treating physician's opinion dated September 8,
> 2003. During this initial psychiatric evaluation Dr.
> Badiola assigned the claimant a GAF of 45, which
> suggested that the claimant was having serious
> symptoms such as, suicidal ideations, severe
> obsessional rituals, or serious impairments in social
> or occupational [functioning]. The undersigned
> finds that Dr. Badiola's opinion is not supported by
> his findings during the evaluation, and that Dr.
> Badiola's clinical notes showed that the claimant
> reported having no suicidal ideations, and that she
> also reported experiencing no obsessive
> compulsive disorder symptoms. It is further noted
> that the claimant's symptoms had improved in only
> one month's time. The record shows that the
> claimant was placed on medication for her
> symptoms during the initial evaluation and that by
> October 7, 2003;[sic] she reported that she was
> feeling less depressed and was having fewer crying
> spells. During this evaluation the physician
> reported that the claimant appeared less anxious or
> dysphoric and that she was alert, fully oriented, and
> she denied having any suicidal or homicidal
> ideations.

The reasons set forth by the law judge amply support his determination to discount the GAF score, particularly since the GAF score simply reflects the plaintiff's overall level of functioning on the day she was seen.

The law judge's determination to discount Dr. Badiola's GAF score is supported further by the assessment of the plaintiff by examining psychiatrist Dr. Arthur J. Forman. As to Dr. Forman's opinion, the law judge stated (Tr. 22-23):

> Finally, the undersigned gives some weight to the opinion of Dr. Forman[,] a one time examining physician's opinion dated October 16, 2003. During this psychiatric evaluation, Dr. Forman assigned the claimant a GAF of 60, which suggested that the claimant was only experiencing moderate symptoms. It is further noted that while the claimant was reported to have mild to moderate symptoms of depression Dr. Forman further reported that from a psychiatric standpoint the claimant was capable of working at full duty without any restrictions[.] The undersigned finds that Dr. Forman's clinical findings are consistent with his assessment of a GAF of 60.

These reasons justify the law judge's acceptance of Dr. Forman's opinion of a GAF score of 60. The evidence of that score about five weeks after Dr. Badiola assigned a GAF of 45 provides further support for the law judge's

determination that the GAF score given by Dr. Badiola did not reflect the

plaintiff's long-range work capacity.

The plaintiff also questions the law judge's evaluation of the

opinion by Dr. Arturo G. Gonzalez, an examining psychiatrist, that the

plaintiff had a GAF of 50 (Doc. 16, p. 17). With respect to that doctor, the

law judge stated (Tr. 22):

> The undersigned has also considered but gives
> little weight to the opinion of Dr. Gonzalez, a one
> time examining physician's opinion dated June 30,
> 2003. During this psychiatric evaluation, Dr.
> Gonzalez assigned the claimant a GAF of 50,
> which again suggested that the claimant was
> having serious symptoms such as, suicidal
> ideations, severe obsessional rituals, or serious
> impairments in social or occupational
> [functioning]. He also opined that the claimant
> would be unable to perform even light duty on a
> part-time basis. However, the undersigned finds
> that Dr. Gonzalez's opinion is inconsistent with his
> clinical notes that the claimant was only
> experiencing a very mild level of emotional
> distress characterized by depression, and an even
> milder level of anxiety. He further reported that
> the claimant's motivation was limited for any kind
> of intervention due to her experiencing very little
> distress. Finally, it is noted that the physician's
> opinion was based on a onetime consultative
> evaluation, and were not consistent with his
> findings during clinical examination.

-16-

This assessment is clearly reasonable since the law judge could easily conclude that the doctor's findings are not consistent with a GAF of 50 (see Tr. 137-40).

In sum, the law judge did a thorough job of evaluating the pertinent medical opinions. Consequently, the plaintiff's contention that the law judge improperly rejected opinions of treating physicians is meritless.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 21st day of February, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE